Sterling R. HOLLAND, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 94–1046.

United States Court of Veterans Appeals.

Aug. 29, 1996.

Sterling R. Holland, pro se.

Mary Lou Keener, General Counsel; Norman G. Cooper, Assistant General Counsel; Adrienne Koerber, Deputy Assistant General Counsel; and Amy S. Gordon, Washington, DC, were on the pleadings, for appellee.

Before KRAMER, IVERS, and STEINBERG, Judges.

STEINBERG, Judge:

The appellant, veteran Sterling R. Holland, on November 16, 1994, filed a Notice of Appeal (NOA) from an August 25, 1994, deci-

sion of the Board of Veterans' Appeals (BVA or Board) granting an increased rating from 10% to 20% for residuals of a service-connected left-ankle fracture [hereinafter ankle residuals] and not addressing the veteran's claim for a disability rating greater than 10% and an earlier effective date for a service-connected back condition. In his NOA, the appellant stated that "Nashville changed [his] original disagreement letter", that he has been "disagreeing with the 10% on [his] back condition", and that he "ha[d] 3 conditions" which he "originally appealed" but that the Department of Veterans Affairs (VA) now states that he "only requested an increase on [his] left ankle".

In April 1995, the appellant filed an informal brief in which he states that he had "attempted to get the VA to service-connect the shortening of the leg and back problems" and that a VA regional office (RO) "recently awarded service[ ] connection on [his] back, but failed to include this information for the BVA to see". He further states that his claim "is not for an increased rating for [his] ankle" but that he seeks service connection for the shortening of his left leg and back problems as secondary conditions caused by his left ankle. He requests the Court to grant service connection for his left leg and back "at the highest possible rating".

In May 1995, the Secretary filed a motion to dismiss, citing *Bentley v. Derwinski*, 1 Vet.App. 28 (1990), in support of his assertion that the issues of the appellant's back and leg disabilities are not appropriately before the Court. The Secretary advises that the only possible issue before the Court is an increased rating for the appellant's service-connected ankle disability. Because the appellant has advised the Court that he does not wish to pursue that issue before this Court, the Court will grant the Secretary's motion as to that claim and dismiss it. *See Bucklinger v. Brown*, 5 Vet.App. 435, 436 (1993). The Court will also dismiss for lack of jurisdiction the appeal as to the issue regarding left-leg shortening. As to the appellant's contentions that the Board erred in its decision not to adjudicate the back-disability claim, the Court will reverse the BVA decision as to that claim and remand that matter to the Board for adjudication.

## I. Background

The veteran served on active duty in the United States Army from March 1951 to March 1954. Record (R.) at 29, 32. In September 1966, a VARO decision granted service connection for ankle residuals and assigned a 0% rating and an effective date from June 27, 1966 (R. at 96–97); the non-compensable rating was affirmed by the Board in an August 1968 final decision (R. at 138). The veteran's claim for service connection for shortening of his left leg as secondary to service-connected ankle residuals was denied in an April 1968 final Board decision. R. at 128–30. In July 1984, a final RO decision increased the rating for ankle residuals to 10%, effective from June 1983. R. at 204, 206.

On March 8, 1991, the veteran sought an increased rating for his service-connected ankle residuals and service connection for a back disorder caused by his ankle residuals. R. at 264–65, 267. The record on appeal (ROA) contains the following documents showing actions taken thereafter on the veteran's three claims: (1) An April 1991 RO decision denying a rating greater than 10% for ankle residuals and denying service connection for a back disorder claimed to be due to the veteran's service-connected ankle residuals (R. at 280, 283); (2) a May 1991 Notice of Disagreement (NOD) as to that decision (R. at 285); (3) a June 1991 Statement of the Case (SOC) identifying the issues on appeal as "[i]ncreased evaluation for his service-connected residuals, fracture, left ankle, postoperative", and "[s]ervice[ ]connection for a back disorder directly due to and proximately the result of service-connected [ankle residuals]" (R. at 289); (4) a July 1991 statement from the veteran requesting "a 90–day extension so [the RO] can reconsider [its] decision of denial based on the attached evidence"; noting that the "whole point over all these years was to include shortening of left leg and back problems"; and stating that the RO "keep[s] ignoring these problems and focus[ing] on the ankle only" and that he "was not asking for an increase for [the] ankle" but "was asking for compensation of

leg and back, which is confirmed by [two doctors]" (R. at 305–06); and (5) a July 1991 RO decision confirming and continuing the April 1991 RO decision and granting the veteran's "request for a 90[–]day extension of his appeal to the [Board]" (R. at 308–09, 311).

In September 1991, the veteran gave sworn testimony before a hearing officer of the Nashville, Tennessee, RO concerning his "pending appeal" for an increased rating for ankle residuals and "also service[ ]connection for a back disorder" (R. at 325), stating that his back problems started shortly after 1966 (R. at 327), and referring to his desire to seek service connection for his left leg (R. at 333–34). A January 1992 decision by the hearing officer denied the back claim and the claim for an increased rating for the ankle residuals. R. at 337. In January 1992, the RO issued a Supplemental SOC (SSOC) identifying both of these claims as issues on appeal. R. at 340. A March 1992 RO letter informed the veteran that his request for a 60–day extension of time within which to file his substantive appeal to the Board was being granted. R. at 348. In a May 1992 VA Form 1–9 (Substantive Appeal to the Board), he stated that he disagreed with the RO's January 1992 decision as to, inter alia, his claim for service connection for a back disorder. R. at 357.

In a February 1993 BVA decision, the Board identified the issues on appeal as "service connection for a low back disorder as being proximately due to, or the result of, a service-connected disability" and "an increased rating for postoperative residuals of a fracture of the left ankle, currently evaluated as 10[%] disabling". R. at 366. The decision also noted that the veteran had raised the issue of service connection for his left leg, stated that that issue was " 'inextricably intertwined' with the issues currently certified on appeal", and "remanded" the matter to the RO. R. at 368–69. The Board directed the RO (1) to arrange for a comprehensive examination of both the veteran's low back and left lower extremity, (2) "to review the claim" and to "include a determination as to whether the veteran is entitled to service connection for shortening of the left lower extremity", and (3) then to furnish the veter-

an with an SSOC. *Ibid.* The February 1993 Board decision also stated: "Thereafter, subject to current appellate procedures, the case should be returned to the Board for further consideration. The veteran need take no action until so informed." *Ibid.*

In April 1993, the RO issued a decision on remand granting service connection for the veteran's back condition, classifying it as "intervertebral disc disease of the lumbar spine", and assigning a 10% disability rating and an effective date of March 8, 1991, and denying an increased rating for ankle residuals. R. at 385–86. A May 13, 1993, SSOC identified the issue on appeal as an increased rating for service-connected ankle residuals. R. at 390. It stated the following with respect to the back claim: "Service[ ]connection has been granted for your back condition as being due to the service-connected left ankle fracture. Therefore, *this issue is considered to have been fully granted and has been deleted from your appeal." Ibid.* (emphasis added).

In a July 12, 1993, statement, the veteran requested a "60[–]day extension on [his] 'Statement of the Case' ". R. at 397. In September 1993, he submitted a letter in response to the May 1993 SSOC; he noted, inter alia, "[d]eteration [sic] of vertebra's [sic] in back", "[d]isagreement with % granted for back problems", and "disagreement with retroactive time granted". R. at 408, 411. The letter also stated: "I believe in all honesty that 10% is not anything close to a just % rating. Especially the length of time that I have been in pain, which represents over 30 years. Also the retroactive time granted is far less than 10% of the total length of time [sic] that I have been living with this problem." R. at 411. After considering additional evidence submitted by the veteran, an October 1993 RO decision confirmed and continued the 10% rating for the ankle residuals. R. at 416–17. In November 1993, the RO issued an SSOC which identified the claim for an increased rating of the ankle residuals as the only issue on appeal. R. at 420. That same month, the veteran, in response to the SSOC, submitted a statement noting that attached to this statement was "a 26[–]page compiled statement [and] docu-

ments that [he was] requesting to be submitted with [his] pending appeal". R. at 424. The attachment consisted of the same letter he had prepared and submitted in September 1993 (R. at 408, 411) which had contained the language concerning his disagreement with the rating and effective date for his service-connected back disability. *Compare* R. at 429 *with* R. at 411.

That same month, apparently in response to the veteran's November 1993 letter, the RO (1) denied an increased rating for his service-connected ankle residuals; (2) denied a rating greater than 10% for his service-connected back disability; (3) denied an effective date earlier than March 8, 1991, for his service-connected back disability; and (4) denied service connection for shortening of his left leg. R. at 452–53. In January 1994, the RO issued an SSOC which addressed only the veteran's claim for an increased rating for the ankle residuals. R. at 458–60.

In the August 25, 1994, BVA decision here on appeal, the Board granted an increased rating from 10% to 20% for the veteran's service-connected ankle residuals. R. at 12. The Board did not address the merits of the veteran's claim for an increased rating for his back disability or of his claim for service connection of left-leg shortening. As to the back claim, the Board in its decision noted that although the veteran "has disputed the adequacy of the 10[%] rating assigned for [a back disability as secondary to the veteran's left-ankle disability], ... the issue has not been procedurally developed for appellate purposes and is not properly before the Board at this time." R. at 8.

## II. Analysis

### A. Back Claim

■ This Court's appellate jurisdiction derives exclusively from statutory grants of authority provided by Congress and may not be extended beyond that permitted by law. *See Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 818, 108 S.Ct. 2166, 2179, 100 L.Ed.2d 811 (1988); *see also Prenzler v. Derwinski*, 928 F.2d 392, 393–94 (Fed. Cir.1991); *Skinner v. Derwinski*, 1 Vet.App. 2 (1990). The Court has jurisdiction to review only those final BVA benefits decisions prior to which an NOD was filed on or after

November 18, 1988, as to an underlying decision of an RO or other agency of original jurisdiction (AOJ). *See* Veterans' Judicial Review Act (VJRA), Pub.L. No. 100–687, § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note); 38 U.S.C. § 7105. This Court, sitting en banc, has held that "[t]here can be only one valid NOD as to a particular claim, extending to all subsequent RO and BVA adjudications on the same claim until a *final* RO or BVA decision has been rendered in that matter, or the appeal has been withdrawn by the claimant." *Hamilton v. Brown*, 4 Vet.App. 528, 538 (1993) (en banc), *aff'd*, 39 F.3d 1574, 1582–85 (Fed.Cir. 1994).

■ A claim appealed to the BVA pursuant to the filing of an NOD remains in appellate status, regardless of whether subsequent actions are taken on that claim by an RO or by the BVA, until a final disposition of the claim is made, and no additional NOD is required or permitted in order to continue the appellate process. *See ibid.* It is not altogether clear from the applicable statutory and regulatory provisions how it is to be determined whether the RO has made a final disposition of a particular claim; specifically, whether—and, if so, under what circumstances—a favorable RO decision on remand from the Board is to be returned to the Board for review pursuant to the Board's remand action. Under the Court's interpretations of the existing statutory and regulatory scheme, as discussed below, the Court concludes that the back claim in this case should have been returned to and adjudicated by the Board.

*1. Applicable VA regulations.* The VA regulation in 38 C.F.R. § 19.38 provides as to cases remanded by the Board to an RO:

> When a case is remanded by the [Board], the [AOJ] will complete the additional development of the evidence or procedural development required. Following completion of the development, the case will be reviewed to determine whether the additional development, together with the evidence which was previously of record, supports the allowance of all benefits sought on appeal. If so, the Board and the appel-

lant and his or her representative, if any, will be promptly informed. *If any benefits sought on appeal remain denied following this review, the [AOJ] will issue a[n SSOC].... Following the 60–day period allowed for a response to the [SSOC] pursuant to Rule of Practice 302, paragraph (c) (§ 20.302(c) of this chapter), the case will be returned to the Board for further appellate processing unless the appeal is withdrawn or review of the response to the [SSOC] results in the allowance of all benefits sought on appeal. Remanded cases will not be closed for failure to respond to the [SSOC].*

38 C.F.R. § 19.38 (1995) (emphasis added). Hence, under § 19.38, an appellant need take no further action, including the submission of a response to an SSOC, to effectuate the return to the Board of an already appealed claim for continued BVA review if any benefits sought on appeal with respect to that claim remain denied. The U.S. Court of Appeals for the Federal Circuit, in affirming this Court's previous decision in *Hamilton, supra,* took specific and approving note of what is now 38 C.F.R. § 19.38, and stated: "[A] case which has been remanded to the unit which made the initial determination is automatically returned to the Board for further processing if full relief is not awarded by the [RO] on remand." *Hamilton,* 39 F.3d at 1585.

VA regulations in 38 C.F.R. § 20.302(c) appear to provide guidance as to when a response to an SSOC would be required:

Where [an SSOC] is furnished, a period of 60 days from the date of mailing of the [SSOC] will be allowed for response.... Provided a Substantive Appeal has been timely filed in accordance with paragraph (b) of this section, the response to [an SSOC] is optional and is not required for the perfection of an appeal, *unless the [SSOC] covers issues that were not included in the original [SOC]. If [an SSOC] covers issues that were not included in the original [SOC], a Substantive Appeal must be filed with respect to those issues within 60 days in order to perfect an appeal with respect to the additional issues.*

38 C.F.R. § 20.302(c) (1995) (emphasis added). The Federal Circuit opinion in *Hamilton* characterized this regulation as providing that "in a case in which the SSOC raises new issues, an additional document must be filed to perfect the appeal with respect to these issues." *Hamilton,* 39 F.3d at 1584. (This quote appears in the opinion shortly before the passage quoted above.) The regulation identifies the "additional document" as "a Substantive Appeal". 38 C.F.R. § 20.302(c).

In view of the cross-reference to § 20.302(c) in § 19.38, the Court must construe both regulatory sections together so that each is part of a "harmonious whole". *Talley v. Derwinski,* 2 Vet.App. 282, 286 (1992) (quoting 2A NORMAN J. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION, § 46.05 (4th ed. 1984)); *see also Smith (William) v. Brown,* 35 F.3d 1516, 1523 (Fed.Cir.1994) ("we must not be guided by a single sentence or member of a sentence, but [should] look to the provisions of the whole law") (quoting *United States Nat. Bank of Oregon v. Independent Ins. Agents of Am., Inc.,* 508 U.S. 439, 455, 113 S.Ct. 2173, 2182, 124 L.Ed.2d 402 (1993), and citing a long line of Supreme Court cases). The Court interprets the last sentence of § 19.38 ("Remanded cases will not be closed for failure to respond to the [SSOC].") as providing that a claimant is not required to file a response to an SSOC issued by an RO pursuant to its decision on remand when the issues decided by the RO on remand pertain to the same claim that is already in appellate status. *See West (Walter) v. Brown,* 7 Vet.App. 329, 331–32 (1995) (en banc) (after Board reverses RO on service connection and returns case for adjudication of "the other essential elements" (rating, effective date), further adjudications of the case "are inextricably part of the case originally filed and are extensions of the appeal that was filed"). The Court does not read the last sentence of § 19.38 as being applicable to a case where an issue or issues with respect to a new claim was initially decided by an RO while the case was on remand from the Board. That situation, rather, is governed by the emphasized language in the quote from § 20.302(c), above, which pre-

sumes that an SSOC would be issued under such circumstances only after an NOD had been filed as to that new claim.

### 2. Full relief not granted by RO.
In this case, it is clear that the appellant was not granted full relief with respect to his back claim, and the RO's May 1993 assertion to the contrary cannot be given conclusive weight. The RO on remand from the Board in April 1993 awarded him a 10% rating and an effective date of March 8, 1991; however, the rating schedule, here 38 C.F.R. § 4.72, Diagnostic Code 5293 (1995), provides for ratings higher than 10% for intervertebral disc disease of the lumbar spine, and an effective date earlier than March 8, 1991, had previously been sought by the veteran while his claim was on appeal to the Board, R. at 327. *See AB v. Brown*, 6 Vet.App. 35, 38 (1993) ("the claimant will generally be presumed to be seeking the maximum benefit allowed by law and regulation, and it follows that such a claim remains in controversy where less than the maximum available benefit is awarded"). The RO, by not returning the back claim to the Board, failed to comply with § 19.38 and this Court's caselaw. There can be no doubt that VA, at the AOJ as well as the BVA levels, must follow its own regulations, not only the ones it finds convenient to follow. *See Vitarelli v. Seaton*, 359 U.S. 535, 539–40, 79 S.Ct. 968, 972–73, 3 L.Ed.2d 1012 (1959); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267–68, 74 S.Ct. 499, 503–04, 98 L.Ed. 681 (1954); *see also, e.g., Coleman v. Brown*, 5 Vet.App. 371, 374 (1993); *Franklin v. Brown*, 5 Vet.App. 190, 193 (1993); *Douglas v. Derwinski*, 2 Vet.App. 435, 440 (1992) (en banc). Here, §§ 19.38 and 20.302 provide binding direction, as discussed above, as to the actions the AOJ must take after it receives a remand from the Board of a case appealed to the Board. Consistent with the discussion in part II.A.1., above, under § 19.38 and *Hamilton, supra*, the RO's decision on the appellant's back claim should, without further action by the claimant, have been "automatically returned to the Board" (*Hamilton, supra*) "for further appellate processing" (38 C.F.R. § 19.38), and the Board's conclusion that it was "not properly before the Board at [that] time" (R. at 8) will thus be reversed and the

matter remanded for the Board to consider the appeal of the back-disability rating and effective date.

### ▌ 3. Response to separate opinion.
The practical effect of the concurring opinion's interpretation of § 19.38 would be to require automatic review by the Board only when the RO on remand from the Board denies service connection. This would mean that if the RO on remand in this case had granted a noncompensable rating for the back claim rather than 10% (with the same effective date), the claim, according to the concurring opinion, would be "fully adjudicated" or "finally decided" (*infra* at 332, 333) by the RO and thus "full relief" (*Hamilton, supra*) and "all benefits sought on appeal" (§ 19.38) would have been granted and there would be no automatic return to the Board. Indeed, the concurring opinion's interpretation would essentially rewrite the governing law. Section 19.38 states that "[i]f any benefits sought on appeal remain denied ..., the case will be returned to the Board". *West* makes clear that an appeal of a service-connection claim includes all benefits potentially available that stem from the essential elements of the claim. Accordingly, the RO action on remand here, as discussed above, denied the veteran full benefits with respect to this claim.

Finally, we wish to note one respect in which we would find ourselves somewhat in agreement with our concurring colleague as to the veteran's 1993 correspondence being a VJRA § 402 NOD consistent with applicable caselaw. We believe that *Hamilton* and *West*, taken together, preclude that result. However, had *West* been decided differently (that is, had it held that service connection, compensable rating, and effective date were, under certain circumstances, three separate and distinct issues rather than elements of the same claim and that each was capable of supporting a separate NOD), *see West*, 7 Vet.App. at 333–39 (Steinberg and Kramer, JJ., dissenting), then the RO's April 1993 award of service connection would have been a full award of benefits, and the RO decision as to the rating and effective-date issues would require NODs in order for those issues to be placed in appellate status for the first

time. In that event, we would agree with our concurring colleague that either the veteran's September 1993 or his November 1993 statement would have constituted a valid NOD, and the procedural posture would be that the veteran would still be entitled to an SSOC from the RO on its action on the rating and effective-date issues. *See* 38 U.S.C. § 7105(d)(1) (issuance of SOC required after filing of NOD); *Tablazon v. Brown,* 8 Vet.App. 359, 361 (1995) (noting that claim still open and RO decision not final where no SOC issued after filing of NOD); *see also Archbold v. Brown,* 9 Vet.App. 124, 129 (1996) (noting "fundamental procedural deficiencies", including "failure of VA ... to issue an SOC after [claimant] filed ... NOD"). The U.S. Court of Appeal for the Federal Circuit, in the pending case of *Barerra v. Brown,* No. 95–7045 (consolidated with *Johnson (Peter) v. Brown,* No. 95–7057) (appeals docketed May 1, 1995, and July 19, 1995, respectively), has been urged to overrule *West* by both the appellants there and (in a brief filed in July 1996) the Secretary. *Cf. Ephraim v. Brown,* 82 F.3d 399, 402 (Fed.Cir.1996) (concluding that claim based on diagnosis of new mental disorder, taken alone or in combination with prior diagnosis of related mental disorder, is new claim for purposes of jurisdictional requirement and therefore permits separate NOD as to that separate but related claim), *vacating and remanding* 5 Vet.App. 549, 550 (1993); *id.* at 551 (Steinberg, J., dissenting).

*4. The Board's jurisdiction.* Based on the above analysis, therefore, the Court holds that it was the May 1991 NOD which gave the Board jurisdiction over the rating and effective-date elements of the back claim, *see Hamilton* and *West,* both *supra,* and that the veteran's appeal to the BVA of his back claim initiated by his May 1991 NOD was not fully satisfied (that is, completed) by the RO's April 1993 award of a 10% rating and an effective date of March 8, 1991, because not all benefits sought on appeal were awarded. *See AB, supra.* The April 1993 RO decision was thus not a final disposition of the back claim, and no response to the SSOC (issued by the RO while the case was on remand) was necessary to effectuate a return to the Board of the rating and effective-date ele-

ments of the already appealed service-connection claim. *See* 38 C.F.R. § 19.38 (last sentence). Those matters were therefore required to have been returned to the BVA for its continued appellate processing and a final Board decision pursuant to 38 U.S.C. § 7104(a). The Board erred in not so finding.

On appeal to this Court, the appellant having raised the issue of the Board's failure to review the November 1993 RO decision on remand denying a rating greater than 10% and an effective date earlier than March 8, 1991, the Court will reverse the Board decision not to adjudicate those matters and remand for it to do so. *Cf. Isenbart v. Brown,* 7 Vet.App. 537, 541 (1995) (remanding TDIU claim to Board to review RO's denial of that claim). The Court notes that the above regulatory analysis points up a certain need for clarification, in line with the analysis in this opinion, in the regulatory scheme as to what actions, if any, a VA claimant who has appealed a claim to the Board must take, and under what circumstances, to keep an appeal to the BVA alive after his or her claim is remanded by the Board to the RO for further development and adjudication and the RO decision on remand awards benefits. Resolution of this regulatory confusion, consistent with statutory provisions and applicable precedential caselaw, would seem a worthy undertaking for the Secretary and his General Counsel. *Cf. Zang v. Brown,* 8 Vet.App. 246, 255–56 (1995) (separate views of Steinberg, J.).

### B. Left-leg Shortening Claim

■ The Court notes that the ROA does not contain an NOD as to the November 1993 RO decision denying the veteran's claim regarding the shortening of his left leg or any response by the veteran regarding this issue newly decided by the RO on remand from the Board. *See* 38 U.S.C. § 7105(a), (b)(1). The ROA shows that this RO decision was the first time the RO had adjudicated this claim following the Board's final April 1968 decision denying that claim (R. at 128) and that this decision was issued pursuant to the Board's February 1993 remand instructions. Accordingly, at the time the Board

issued its August 1994 decision, appellate review of this claim had not been initiated, and the Board did not have jurisdiction to decide this issue and thus did not err in failing to address it. *See* 38 U.S.C. § 7105(a). The Court notes that this claim would still be open if notice of appellate rights as to that claim had not been provided with the denial of the claim (the ROA does not indicate one way or the other). *See* 38 U.S.C. § 5104(a), (b); *Hauck v. Brown*, 6 Vet.App. 518, 519 (1994) (per curiam order) (holding that where appellant "never received notification of any denial ..., the one-year period within which to file an NOD, which commences with 'the date of mailing of notice of the result of initial review or determination,' did not begin to run"). In any event, absent a jurisdiction-conferring NOD under VJRA § 402, this Court has no jurisdiction to dispose of this claim. The Court will thus dismiss the appeal as to this claim.

### III. Conclusion

Upon consideration of the record, the appellant's brief, and the Secretary's motion, the Court grants the Secretary's motion to dismiss the appeal as to the appellant's claim for an increased rating for ankle residuals and as to the leg-shortening claim, and reverses the August 1994 Board decision to the extent that it failed to address the appellant's claim for a rating greater than 10% and an effective date earlier than March 8, 1991, with respect to his service-connected back disability. The Court remands the matter of the appellant's service-connected back claim for expeditious adjudication, on the basis of all applicable law and regulation, and issuance of a decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 5107(a), (b); 7104(a), (d)(1), 7261; *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991)— all consistent with this opinion and in accordance with section 302 of the Veterans' Benefits Improvements Act, Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims "remanded" by BVA or Court). *See Allday v. Brown*, 7 Vet.App. 517, 533–34 (1995). "On remand, the [claimant] will be free to submit additional evidence and argu-

ment" on the remanded claim(s). *Quarles v. Derwinski*, 3 Vet.App. 129, 141 (1992). The Court denies the Secretary's motion for summary affirmance. A final decision by the Board following the remand herein ordered will constitute a new decision which, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant.

DISMISSED IN PART; REVERSED and REMANDED IN PART.

IVERS, Judge, concurring in the result:

Although I agree that the appellant should remain in appellate status, I must respectfully dissent to the majority's analysis in Part II.A.1. The reason I dissent is because the majority here, and the Court, perhaps on other occasions, has interpreted the holding in *Hamilton v. Brown*, 39 F.3d 1574 (Fed. Cir.1994), far too broadly. By broadly interpreting its holding, the majority has produced a result based upon a factual posture not contemplated by the Court in *Hamilton.*

In *Hamilton*, the Federal Circuit held that "[A] case which has been remanded to the unit which made the initial determination is automatically returned to the Board for further processing if full relief is not rewarded by the [RO] on remand." *Id.* at 1585. While it is true that on remand the appellant's claim remains in appellate status with the RO acting as an arm of the BVA, once the RO readjudicates the claim on remand and decides each element of a claim, the outcome becomes a final, initial AOJ decision on that claim. (This Court has concluded that VA has fully adjudicated a claim when it decides all of the claim's essential elements—the veteran's status, disability, service connection, rating (even a noncompensable rating), and effective date. *West v. Brown*, 7 Vet.App. 329, 332 (1995) (en banc).) Once the *West* elements are adjudicated, the RO decision is final and may be reviewed only upon the filing of an NOD. *See* 38 U.S.C. § 7105(a)-(c); *see also Lyon v. Brown*, 5 Vet.App. 507, 509 (1993).

After the February 1993 BVA decision to remand, the appellant was granted benefits by the RO for a service-connected back disability rated at 10% disabling with an effective date of March 8, 1991. R. at 385–87. This grant constituted "full benefits" for purposes of 38 C.F.R. § 19.38. R. at 390–92. *See West,* 7 Vet.App. at 332. The grant, in effect, changed the nature of the claim from one in "appellate status" to one which has been finally adjudicated by an agency of original jurisdiction—namely the RO. *See Strott v. Derwinski,* 964 F.2d 1124, 1127 (Fed.Cir.1992) (agency of original jurisdiction is the VA agency which adjudicates the claim before an appeal to the Board); *Prenzler v. Derwinski,* 928 F.2d 392, 394 (Fed.Cir.1991).

The factual posture of this claim clearly distinguishes it from *Hamilton* and the cases which preceded it. In *Hamilton,* unlike the situation in this case, the appellant was denied benefits by the RO after the BVA remanded. *Hamilton,* 39 F.3d at 1578. Hamilton was not granted service connection for PTSD by the RO on remand. His claim remained denied, and, under the language of 38 C.F.R. § 19.38, he was denied "the allowance of all benefits sought on appeal." Therefore, his claim remained in appellate status. In the instant case, the appellant was awarded service connection with a 10% rating and an effective date thereby granting him the "full benefits" he sought on his appeal. After that award, appellate status for the back claim no longer existed and the appellant's original claim for service connection ended. From that point, the appellant could only pursue a claim for an increased rating or an earlier effective date and do so by filing a NOD.

Although at first glance, the language of the *Hamilton* opinion appears to encompass the facts in this case, the procedural facts of this case make the appellant's back claim one of first impression for this Court. By applying a broad interpretation of the *Hamilton* holding to this case, the majority creates an outcome not contemplated by the *Hamilton* Court—one which would lead to disparate treatment of veterans who have received identical final decisions. While other appellants would be required to file an NOD in order to appeal a final decision, this appellant, and those similarly situated, would be granted automatic review by the BVA.

Not only would the result reached by the majority grant disparate treatment of similarly situated veterans, it would fly in the face of long-established procedures, procedures followed by the RO and the BVA in this case, and it tortures the regulatory scheme to do so. It is clear from a reading of the regulations that they are in place to address claims where full benefits are not granted and not claims where benefits are fully granted and are, thus, finally decided claims.

The majority interprets the language of 38 C.F.R. § 20.302(c) in such a manner as to support their conclusion that the appellant's claim remains in appellate status. However, the same result could and should be achieved by simply acknowledging that full benefits were granted in April 1993 and that an NOD is required in order to start the appeal as to the back claim. By ignoring this simple fact without explanation, the majority forces itself to take a highly circuitous route to find a basis for the veteran's appeal. In its analysis, the majority states that "[i]n view of the cross reference to § 20.302(c) in § 19.38, the Court must construe both sections together so that each is part of a 'harmonious whole.'" *Ante* at 328 (citing *Talley v. Derwinski,* 2 Vet.App. 282, 286 (1992)). I disagree. The reference to section 20.302(c) simply provides procedural guidance for responding to an SSOC. No language in either § 19.38 or § 20.302(c) suggests that the provisions are to be read as a "harmonious whole."

In summary, the BVA properly found that the appellant's claim had been fully adjudicated by the RO on remand. *See* R. at 2. The only error committed by the Board with respect to the appellant's back claim was a failure to recognize the appellant's September and November 1993 correspondence to the VA as valid NODs. Although I disagree with the majority's analysis, I do agree with the result because the appellant in this case did file correspondence in September and again in November of 1993, each constituting

a valid NOD for the back claim, and thereby initiating the appeal of the back claim.