# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 16-0638

JOHN J. BATCHER, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued September 14, 2018                                      April 26, 2019)

*John S. Kamarados*, of New Kensington, Pennsylvania, for the appellant.

*Bryan W. Thompson*, with whom *Meghan Flanz*, Interim General Counsel;[1] *Mary Ann Flynn*, Chief Counsel; *Selket N. Cottle*, Deputy Chief Counsel; *Sarah W. Fusina*, Senior Appellate Attorney, were on the brief, all of Washington, D.C., for the appellee.

Before BARTLEY, GREENBERG, and TOTH, *Judges*.

BARTLEY, *Judge*, filed the opinion of the Court. GREENBERG, *Judge*, filed a dissenting opinion.

BARTLEY, *Judge*: Veteran John J. Batcher appeals through counsel a December 17, 2015, Board of Veterans' Appeals (Board) decision granting Roberta M. Batcher entitlement to special apportionment of the veteran's disability compensation benefits from April 2008 to December 2010, at which time the veteran and Ms. Batcher were married but living separately. Record (R.) at 3-9.[2] This matter, over which the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a), was referred to a panel of the Court, with oral argument,[3] to address whether and to what extent a separation agreement sanctioned by a state court during divorce proceedings affects a spouse's entitlement to special apportionment of a veteran's VA benefits. We hold that a domestic

---

[1] Meghan Flanz was Interim General Counsel for the appellee when his brief was submitted to the Court, but James M. Byrne has since been appointed General Counsel.

[2] During oral argument, the Court ordered the Secretary to supplement the record of proceedings (ROP) with various documents. He did so one week later, filing a supplemental record of proceedings (SROP) consisting of two parts. Citations to the SROP will be designated as such.

[3] Oral argument was held at Penn State's Dickinson Law in Carlisle, Pennsylvania, on September 14, 2018. The Court extends its appreciation to the law school for its hospitality.

relations separation agreement sanctioned by a state court by a judgment of separation plays no role in VA's determination of entitlement to special apportionment. To the extent that such an agreement purports to preclude a veteran's spouse from seeking apportionment of a veteran's VA benefits, the veteran's remedy to make himself or herself whole lies with the state court. Accordingly, the Court will affirm the December 2015 Board decision.

## I. FACTS

Mr. Batcher served on active duty in the U.S. Army from September 1966 to August 1967. R. at 971. He married Roberta in February 1972, R. at 917, and the couple separated in September 2001, R. at 456.

In December 2004, Mr. Batcher filed a separation action in the Supreme Court of the State of New York, Suffolk County (hereinafter New York State Court). *See* R. at 461. In March 2005, the New York State Court entered a judgment of separation based on a stipulated agreement between the Batchers, which specified that, inter alia, the veteran would pay Ms. Batcher a $7,200 distributive award; monthly maintenance payments of $300 commencing on January 1, 2005; $3,000 in arrears maintenance payments; and "certain benefits from the US Army." R. at 463-64. Regarding the Army benefits, the judgment of separation directed that Mr. Batcher "shall cooperate with [Ms. Batcher] to effectuate all necessary filings for [her] to receive payments due her under Federal laws, including survivor benefits or any life insurance benefits, without additional costs to the [veteran]." R. at 464. The judgment of separation further indicated that "all other issues of personal properties and marital debts have been resolved." *Id*.

One year later, in March 2006, Mr. Batcher filed with VA a claim for service connection for various disabilities. SROP at 896-909. He indicated that he was married but was not living with his spouse. SROP at 903.

In September 2006, a VA regional office (RO) granted Mr. Batcher service connection for diabetes mellitus type II and assigned a disability evaluation of 20% effective March 27, 2005, one year prior to the date of his claim. SROP at 707-08. The RO also granted service connection for five disabilities secondary to diabetes mellitus type II, as well as special monthly compensation (SMC) for loss of use of a creative organ, all effective March 27, 2006, the date of his claim. SROP at 708-12. As a result of that decision, Mr. Batcher received a combined disability evaluation of 20% beginning on March 27, 2005, and 40% plus SMC at the (k)(1) level beginning

on March 27, 2006. SROP at 715. The RO informed him that, as of April 1, 2006, his disability compensation payment "include[d] an additional amount for [his] spouse" and that he was required to notify VA "right away if there is any change in [his] marital status." SROP at 699.[4]

In November 2006, two months after the veteran was awarded VA disability compensation, the New York State Court held a maintenance hearing. R. at 467-80. At the hearing, the parties stipulated that Ms. Batcher would accept a lump sum payment of $7,000 from Mr. Batcher in lieu of the previously agreed-upon monthly maintenance payments. R. at 469 (explaining that, in consideration of the lump sum payment, "all maintenance and health insurance and obligations owing from [Mr. Batcher] to [Ms. Batcher] shall cease"), 470 (Ms. Batcher's attorney's acknowledgment that "the $7,000 amount would resolve the past maintenance, which is due and owing[,] and future maintenance"). The parties agreed to be bound by this stipulation, R. at 473-79, and the March 2005 judgment of separation was modified to reflect that Mr. Batcher no longer owed future maintenance or support obligations to Ms. Batcher. *See* R. at 472 (parties' agreement that the March 2005 judgment of separation was modified with respect to maintenance payments and that the new stipulation "resolves the issues with respect to maintenance"). Mr. Batcher issued a $7,000 check to Ms. Batcher later that month. R. at 481.

Notwithstanding the November 2006 hearing stipulation, the New York State Court determined, in December 2006, that Mr. Batcher's disposable military retired pay from the Uniformed Service Retired Pay Program was marital property and ordered the veteran to pay 50% of those monthly benefits to Ms. Batcher. R. at 483-86. And, in October 2007, the New York State Court ordered Mr. Batcher to release to Ms. Batcher 50% of the funds from his 401(k) retirement account. R. at 499-500.

Ms. Batcher's financial condition subsequently deteriorated and, in April 2008, she filed a claim with VA for apportionment of Mr. Batcher's VA disability compensation benefits. *See* R. at 576. In August 2009, the RO denied entitlement to apportionment, including special apportionment, because, although Ms. Batcher's monthly living expenses exceeded her income, she "voluntarily renounced any maintenance or support from the veteran[,] including future claims," in November 2006. R. at 538. Ms. Batcher timely appealed that decision to the Board,

---

[4] Although VA ultimately increased Mr. Batcher's combined disability evaluation, he first met the criteria to receive additional compensation for a dependent on April 1, 2006. *See* 38 U.S.C. § 1115 (authorizing additional compensation for a veteran with dependents "whose disability is rated not less than 30[%]").

3

which, in November 2013, remanded to correct a notice error. R. at 46-52. In the meantime, Ms. Batcher became homeless, *see* R. at 9, and the couple divorced in December 2010, R. at 453.

In December 2015, the Board issued the decision currently on appeal. R. at 3-9. The Board reviewed the evidence of record, including the March 2005 judgment of separation and the November 2006 hearing transcript, but found that there was "inadequate objective evidence" to decide Ms. Batcher's entitlement to general apportionment because it was unclear whether the veteran reasonably discharged his responsibility for her support. R. at 7-8. The Board granted Ms. Batcher special apportionment of the veteran's disability compensation benefits between April 2008 and December 2010 because it found that she had experienced a hardship during that period—namely, that her monthly living expenses exceeded her income and that she was homeless for a time—and that the veteran had not offered any mitigating evidence of his own undue hardship. R. at 8-9. This appeal followed.[5]

## II. ANALYSIS

Mr. Batcher primarily argues that the Board erred in granting Ms. Batcher special apportionment of his VA disability compensation because it failed to consider whether she waived her right to apportionment when she agreed, in a November 2006 state court proceeding, to accept a lump sum payment from him, purportedly resolving all his past and future maintenance and support obligations to her. The Secretary disputes this contention and urges the Court to affirm the Board decision because VA was obligated to grant special apportionment once Ms. Batcher met the statutory and regulatory criteria for that benefit, regardless of the terms of any potentially contrary contract between the Batchers. In the Secretary's view, the proper remedy for Mr. Batcher to pursue is to return to the New York State Court to seek modification of the separation agreement to reflect the changed circumstances of the grant of apportionment. The Court agrees with the Secretary.

Relevant to this appeal, a veterans benefits statute provides that "[a]ll or any part of the [VA] compensation, pension, or emergency officers' retirement pay payable on account of any veteran may[,] . . . if the veteran is not living with the veteran's spouse, . . . be apportioned as may be prescribed by the Secretary." 38 U.S.C. § 5307(a)(2). In general, VA may apportion such

---

[5] In November 2016, Mr. Batcher served Ms. Batcher with a copy of the Notice of Appeal in this case. The Court then ordered that Ms. Batcher had 60 days to file a motion to intervene, but she did not do so.

benefits to a competent veteran's spouse "if the veteran is not residing with his or her spouse, . . . and the veteran is not reasonably discharging his or her responsibility for the spouse's . . . support." 38 C.F.R. § 3.450(a)(1)(ii) (2018).  Those benefits may be "specially apportioned" to the spouse of a veteran, "[w]ithout regard to any other provision regarding apportionment[,] where hardship is shown to exist."  38 C.F.R. § 3.451 (2018).  Special apportionment is awarded "on the basis of the facts in the individual case as long as it does not cause undue hardship to the other persons in interest," with certain exceptions not applicable here.  *Id.*; *see Hall v. Brown*, 5 Vet.App. 294, 295 (1993).  "In determining the basis for special apportionment, consideration will be given such factors as: Amount of [VA] benefits payable; other resources and income of the veteran and those dependents in whose behalf apportionment is claimed; and special needs of the veteran, his or her dependents, and the apportionment claimants."  38 C.F.R. § 3.451.

In enacting section 5307, Congress bestowed on certain veterans' dependents the right to seek apportionment of certain VA benefits paid to the veteran, including disability compensation. *See* 38 U.S.C. § 5307(a); *Belton v. Principi*, 17 Vet.App. 209, 211 (2003) ("Although arising from a veteran's benefits, an apportionment is an entity legally separate from those benefits.  Thus, when veterans' dependents file on their own behalf for an apportionment, they seek to exercise their right to an apportionment."  (internal quotation marks omitted)).  Congress's intent in creating this federal apportionment right is clear—namely, to ensure that "veterans' disability benefits [] be used, in part, for the support of veterans' dependents." *Rose v. Rose*, 481 U.S. 619, 631 (1987); *see also* VA Gen. Coun. Prec. 74-90 (July 18, 1990) ("The purpose of apportionment is to effectuate the responsibility of a VA beneficiary to support the beneficiary's dependent.").

After specifying the general classes of dependents eligible to receive apportionment, Congress delegated to the Secretary the sole responsibility for defining the criteria for entitlement to apportionment.  *See, e.g.*, 38 U.S.C. § 5307(a)(2) (authorizing apportionment for certain dependents "as may be prescribed by the Secretary").  Pursuant to that statutory authority, the Secretary promulgated § 3.450 and § 3.451, which contain the elements for establishing entitlement to general and special apportionment, respectively.  As outlined above, to be entitled to special apportionment, a claimant must establish that (1) he or she is a qualifying dependent of the veteran; (2) he or she suffered a hardship during the relevant period; and (3) apportionment would not cause undue hardship to the other person of interest, usually the veteran.  38 C.F.R. § 3.451.  Once those criteria are met, entitlement to special apportionment is established and VA

5

must grant that benefit to the claimant. *See Holland v. Brown*, 9 Vet.App. 324, 329 (1996) (holding that VA is bound by its own regulations (citing *Vitarelli v. Seaton*, 359 U.S. 535, 539-40 (1959))); *see also Cushman v. Shinseki*, 576 F.3d 1290, 1298 (Fed. Cir. 2009) (explaining that "[a] veteran is entitled to disability benefits upon a showing that he [or she] meets the eligibility requirements set forth in the governing statutes and regulations").

That is precisely what happened here. In December 2015, the Board determined that Ms. Batcher met all the requirements for special apportionment: (1) she was married to but not living with Mr. Batcher between April 2008 and December 2010,[6] R. at 7; (2) she experienced hardship during that period, as evidenced by the fact that her monthly living expenses exceeded her monthly income and she was homeless for a time, R. at 8-9; and (3) Mr. Batcher did not proffer any evidence that apportionment of his disability compensation benefits would cause him undue hardship, R. at 9. With those findings by the Board, entitlement to special apportionment was established and only the administrative steps of calculation and payment of the apportioned benefits remained. *See Cushman*, 576 F.3d at 1298; *Jackson v. McDonald*, 635 Fed. App'x 858, 861-62 (Fed. Cir. 2015) (noting that entitlement to a benefit is established when "[a]ll the determinations required for an award" have been made, even if "clerical computations . . . to produce the bottom-line dollar amount" of the awarded benefit still remain). Accordingly, the Court discerns no error in the Board's adjudication of Ms. Batcher's apportionment claim.

Mr. Batcher does not challenge any of the Board's specific findings regarding Ms. Batcher's entitlement to special apportionment.[7] Instead, the veteran limits his arguments to whether Ms. Batcher waived her right to seek apportionment of his disability compensation by agreeing at the November 2006 support hearing to accept a lump sum payment in lieu of future maintenance and

---

[6] Although our dissenting colleague notes that section 5307(a)(2) permits apportionment of certain veterans benefits to a "veteran's spouse" as opposed to an "ex-spouse," *post* at 8-9, it is undisputed that the Batchers were married but living separately—i.e., that Ms. Batcher was the veteran's spouse—for the entire period for which the Board granted special apportionment. *See* R. at 6 ("[A] divorce decree between the [v]eteran and [Ms. Batcher] was entered on December 23, 2010. [Ms. Batcher] lost her right to any potential apportionment effective from the date of their divorce forward. As such, this decision focuses on the period from the date of claim to the date of divorce." (internal citations omitted)), 9 (finding that Ms. Batcher was "entitled to apportionment of the [v]eteran's compensation for the period prior to their divorce").

[7] He also does not attack the validity of § 3.451, argue that he was not properly informed of the proceeding or that he did not have the opportunity to present evidence, or otherwise argue that the grant of special apportionment in this case effected an unconstitutional taking of his property. Consequently, the Court deems any such arguments abandoned and will not consider them in this decision. *See Grivois v. Brown*, 6 Vet.App. 136, 138 (1994) (explaining that the Court has discretion to deem abandoned issues not argued on appeal).

support payments from him.[8]  Whether Ms. Batcher contracted away her right to file a claim for special apportionment in exchange for adequate consideration from Mr. Batcher—a question that requires interpretation of a state-court-sanctioned, domestic-relations contract between two private parties, which was drafted pursuant to state law, *see* N.Y. FAM. CT. ACT § 425*,* and to which VA is not a party—is a matter of contract law best decided by a state court.  *See United States v. Windsor*, 570 U.S. 744, 766 (2013) (noting that, "subject to [constitutional] guarantees, regulation of domestic relations is an area that has long been regarded as a virtually exclusive province of the States" (internal quotation omitted)); *Pennoyer v. Neff*, 95 U.S. 714, 722 (1877) ("[E]very State has the power . . . to prescribe the subjects upon which [its inhabitants] may contract, the forms and solemnities with which their contracts shall be executed, the rights and obligations arising from them, and the mode in which their validity shall be determined and their obligations enforced."); *Meccico v. Meccico*, 76 N.Y.2d 822, 823-24 (N.Y. 1990) ("A separation agreement is a contract subject to the principles of contract construction and interpretation.").

The Supreme Court's decision in *Howell v. Howell*, 137 S.Ct. 1400 (2017), is instructive in this regard.  In that case, a state court awarded Mrs. Howell 50% of Mr. Howell's military retirement pay, a portion of which he later waived to receive VA disability compensation benefits, thereby decreasing his ex-wife's share.  *Id*. at 1404.  The state court ordered Mr. Howell to reimburse or indemnify Mrs. Howell for the lost share, but the Supreme Court held that such an order violated the portion of the Uniformed Services Former Spouses' Protection Act that excludes from the definition of "disposable retirement pay" divisible upon divorce the amount of retirement pay waived to receive VA disability benefits.  *Id*. at 1404-05; *see* 10 U.S.C. § 1408(a)(4)(A)(ii); *Mansell v. Mansell*, 490 U.S. 581, 594-95 (1989).  The Supreme Court explained that the contingency that Mr. Howell might execute such a waiver "meant that the value of [Mrs. Howell's] share of military retirement pay was possibly worth less—perhaps less than [she] and others thought—at the time of the divorce" and that "a family court, when it first determines the value of a family's assets, remains free to take account of the contingency that some military retirement pay might be waived, or, . . . take account of reductions in value when it calculates or recalculates the need for spousal support." *Howell*, 137 S.Ct. at 1405-06 (citing *Rose*, 481 U.S. at 630-34 and n.6)

---

[8] The Court notes that the New York State Court's December 2006 and October 2007 orders that Mr. Batcher pay Ms. Batcher 50% of his military retired pay and the proceeds of his 401(k) retirement account, respectively, appear to belie that assertion.  R. at 483-86, 499-500.

The same logic applies here. A federal benefit—Ms. Batcher's right to claim special apportionment, *see Belton*, 17 Vet.App. at 211—made Mr. Batcher's spousal obligation potentially greater than he anticipated in November 2006. Mr. Batcher could have valued that contingency in the separation agreement and negotiated a lower lump sum payment to account for it. *See Howell*, 137 S.Ct. at 1406. He apparently did not do so. Nevertheless, the veteran remains free to seek redress from Ms. Batcher in the New York State Court, either by suing Ms. Batcher for breach of contract or seeking modification of the separation agreement based on the changed circumstance of the grant of special apportionment. *See id.*; *see also* N.Y. FAM. CT. ACT § 466(a) (permitting modification of a support or maintenance decree based on changed circumstances). In either event, his remedy does not lie with VA.

## III. CONCLUSION

Upon consideration of the foregoing, the December 17, 2015, Board decision is AFFIRMED.


GREENBERG *J. dissenting*: The Secretary is surely too busy to be spending his valuable time and limited legal resources hounding a Vietnam combat veteran about issues that were settled in a state court agreement a decade ago. For that and the following reasons, and with the greatest possible respect for my colleagues, I dissent.

This is a matter of statutory construction. The statute in question is 38 U.S.C. § 5307(a)(2), which provides, in pertinent part: "if the veteran is not living with the veteran's *spouse* . . . [benefits may] be apportioned as prescribed by the secretary." 38 U.S.C. § 5307(a)(2). The language of the statute is "unambiguous, unequivocal, and unlimited." *Conroy v. Aniskoff*, 507 U.S. 511, 514 (1993).

Mr. John J. Batcher (appellant) is a decorated Vietnam combat veteran, R. at 971 (DD Form 214), and he is unemployable because of his service-connected disabilities, R. at 125-30. The veteran and his ex-spouse, Roberta Batcher (Ms. Batcher), were separated in September 2001. R. at 456. In November 2006, the parties, each represented by counsel, with full knowledge of the financial status of the veteran, entered a settlement agreement addressing their financial disputes. R. at 467-80, 469. Despite this agreement, Ms. Batcher filed a claim with VA requesting apportionment of the appellant's disability benefits in July 2008. R. at 539. In August 2009, the

8

regional office (RO) denied Ms. Batcher's request for apportionment stating: "we must deny the claim for an apportionment at this time because Roberta, the spouse, voluntarily renounced any maintenance or support from the veteran including future claims." R. at 538. Ms. Batcher appealed and the RO continued to deny apportionment in multiple Statements of the Case. *See, e.g.,* R. at 42-43. On December 23, 2010, the parties were divorced. R. at 453. On December 17, 2015, the Board issued a decision granting Ms. Batcher an apportionment of the veteran's disability benefits because Ms. Batcher showed a hardship and the appellant did not. R. at 9. The appellant appealed.

Ms. Batcher should get nothing from VA. If her circumstances have changed it is she, not the veteran, who must return to state court for a modification. Apparently, the parties agreed in New York, R. at 467-80, but were divorced in Pennsylvania, R. at 453. The statute concerning apportionment of VA benefits clearly states that benefits may be apportioned "if the veteran is not living with the veteran's *spouse*." 38 U.S.C. § 5307(a)(2) (emphasis added). Congress could have said ex-spouse, but it did not and "[i]f the intent of Congress is clear, that is the end of the matter." *Chevron, U.S.C., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984). The Congressional directive to the Secretary is clear – he may apportion benefits for separated *spouses*. Not ex-spouses. *See* 38 U.S.C. § 5307(a)(2). Further, "the whole subject of domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *Rose v. Rose*, 481 U.S. 619, 625 (1987) (citing *In re Burrus*, 136 U.S. 586, 593-594 (1890)); *see also Howell v. Howell*, 137 S. Ct. 1400, 1406 (2017) (holding that, while military retirement pay is divisible as marital property, veterans disability pay is not). The state of New Jersey recently dealt with the Supreme Court holding in *Howell* when it decided *Fattore v. Fattore,* ___ A.3d ___, No. A-3727-16T1, 2019 WL 437946 (Feb. 5 2019). There, the New Jersey Appellate Division determined that a divorce agreement disposed of the marital property and the only way to address a change in circumstances was by petitioning the New Jersey courts. *Id.* The same is true here. If the ex-spouse in this case had a change in circumstances, the appropriate place to address those circumstances was with the state court where she entered her binding contract, New York. R. at 467-80. She may also be free to petition the Commonwealth of Pennsylvania where the actual decree of divorce was entered. R. at 453. Not with VA.

The correct analogy is to Article 1, Section 10, of the United States Constitution, which states: "No state shall . . . impair the obligation of Contracts." U.S. Const. art. 1, §10. *See Trustees of Dartmouth College v. Woodward*, 17 U.S. 581 (1819). While this provision of the Constitution

applies to states, and not to the federal government, the reasoning remains the same. That is, the ex-spouse should not be permitted to maintain a modification of a properly entered state sanctioned contract, neither the New York agreement nor the Pennsylvania decree, by the misuse of a VA order, itself the subject of intense dispute. *Compare* the RO determinations, R. at 538, *with* the Board decision, R. at 9. VA should not be impairing a contract sanctioned by a state court. The Court should have held that the state court agreements controlled here.

For these reasons, I dissent.